IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMRA KAY CRAIN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-11-451-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Tammra Kay Crain requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 21, 1962, and she was forty-eight years old at the time of the most recent administrative hearing. She has a sixth grade education and has past relevant work as a packer, cleaner, cashier, and stock clerk (Tr. 31, 46). The claimant alleges she has been unable to work since December 31, 2008 because of paranoid schizophrenia, congestive heart failure, restless legs syndrome, hypertension, and breathing problems (Tr. 161).

## Procedural History

On February 19, 2009, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Trace Baldwin conducted a hearing and determined that the claimant was not disabled in a decision dated September 20, 2010. The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

-3-

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (diabetes mellitus, chronic obstructive pulmonary disease (COPD), cervical spine degenerative disc disease, obesity, bipolar disorder, post-traumatic stress disorder (PTSD), and paranoid personality disorder) but retained the residual functional capacity ("RFC") to perform work sedentary work as defined in 20 C.F.R. § 416.967(a). However, the ALJ imposed the following additional limitations: i) no pushing or pulling, including hand and foot controls; ii) occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; iii) occasionally kneeling, crouching, and crawling; and (iv) avoiding hazards such as heights, moving machinery, equipment, and uneven surfaces (Tr. 19). Due to psychological impairments, the ALJ also found that the claimant can perform only simple and repetitive tasks, and has limitations in her ability to work with the general public (Tr. 19). The ALJ concluded that while the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *i.e.*, optical goods assembler, cutter and paster, and hand mounter (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find additional severe impairments at step two, *i. e.*, lower back pain; (ii) by failing to properly analyze her RFC at step four; and (iii) by failing to pose proper hypotheticals to the vocational expert. The Court finds the claimant's second contention persuasive.

The claimant was evaluated by state examining physician Dr. Robert L. Spray, Ph.D. on June 3, 2009 (Tr. 261-69).  The claimant reported having a sixth grade education and does not comprehend the things she reads (Tr. 261).  She has been married five times and had been separated from her fifth husband for seven to eight months at the time of the evaluation (Tr. 262).  The claimant has also had a problem with substance abuse in the past, using crack, roxycodone, and oxycodone, and began using at the age of 22 or 23 (Tr. 262).  The claimant's speech was described as "spontaneous but also rapid, pressed, and plosive" (Tr. 262).  She also reported that her stepfather physically and sexually abused her, and she has been raped twice (Tr. 262).  Dr. Spray noted that the claimant demonstrated poor concentration, limited math skills, and had a limited fund of information (Tr. 263).  His diagnoses included bipolar disorder, mixed, currently without psychotic features, polysubstance abuse in early remission, and PTSD (Tr. 263).  In his evaluation of claimant's adaptive functioning he offered the following opinions: i) claimant may have difficulty communicating in a job setting because of her rapid, pressed, and plosive speech pattern; ii) claimant is easily provoked to anger in a job setting; and iii) claimant's concentration was moderately impaired, her persistence was fair, and her pace was slow (Tr. 264).

State reviewing physician Dr. Phillip Massad, Ph.D. complete a Psychiatric Review Technique on June 22, 2009, in which he found that the claimant suffered from affective disorders (characterized by appetite disturbance with a change in weight, feelings of guilt or worthlessness, difficulty concentrating or thinking, and hallucinations,

delusions, or paranoid thinking), anxiety-related disorders (characterized by a recurrent and intrusive recollection of a traumatic experience, which is a source of marked distress), personality disorders (described as an inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by pathologically inappropriate suspiciousness or hostility), and substance addiction disorders (Tr. 270-79).  As a result of these problems, Dr. Massad opined that the claimant had moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 280).  Dr. Massad also completed a Mental Residual Functional Capacity Assessment in which he found that claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 284-85).

    The claimant's treating physician Dr. Ben Cheek, D.O. completed, *inter alia*, a Mental Medical Source Statement on June 29, 2010 (Tr. 443-46).  Dr. Cheek opined that the claimant had marked limitations in the following areas: i) ability to maintain attention and concentration for extended periods; ii) ability to work in coordination with or proximity with others without being distracted by them; and iii) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 444).  Dr. Cheek also found that claimant had moderate limitations in a number of areas: i) ability to understand and remember detailed

instructions; ii) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; iii) ability to sustain an ordinary routine without special supervision; iv) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and v) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 443-45). Dr. Cheek wrote that claimant had a short attention span with flighty conversation and a rapid speech pattern (Tr. 446).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the

opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted]. The ALJ briefly mentioned Dr. Cheek's Mental Medical Source Statement, but failed to analyze it in accordance with the factors set out in 20 C.F.R. § 416.927. *See*, *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995).

Further, the ALJ appears to have relied on the opinion of state reviewing physician Dr. Massad, but failed to mention, let alone analyze, the opinion and explain why it outweighed the opinions expressed by both Dr. Cheek and state examining physician Dr. Spray. "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he

must explain the weight he is giving to it." *Hamlin*, 365 F.3d at 1223, *citing* 20 C.F.R. § 404.1527(f)(2)(ii), 416.927(f)(2)(ii). *See also*, *Warren v. Barnhart*, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (remanding ALJ's decision because it "contain[ed] no analysis of the expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or explanation of how the expert's opinion outweigh[ed] that of the treating physician.") [unpublished opinion]; *Shubargo v. Barnhart*, 161 Fed. Appx. 748, 754 (10th Cir. 2005) ("[T]he agency requires ALJs to weigh all medical source opinion evidence and explain in their decision why they rely on a particular non-examining agency expert's opinion when opinions are conflicting . . . We conclude that this case must be remanded for the ALJ to consider and discuss Dr. Woodcock's medical opinion and to explain why he rejected it in favor of other non-examining consultative opinions.") [unpublished opinion], *citing* 20 C.F.R. §§ 404.1527(f); *Hamlin*, 365 F.3d at 1223; *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Importantly, both Dr. Cheek and Dr. Spray noted that the claimant would have difficulty communicating in a work environment due to her pressed and plosive speech pattern. Further, both doctors found that the claimant had potentially significant problems related to concentration and noted her problems related to anger, *i. e.*, Dr. Spray wrote that claimant "is easily provoked to anger" and Dr. Cheek opined that claimant had moderate limitations in both the ability to get along with coworkers/peers without distracting them or exhibiting behavior extremes and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 263, 444-45). Yet, the ALJ failed to even *mention* Dr.

Spray's findings. Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4 ("[T]he [ALJ] . . . must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists. . . . RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s).").

Because the ALJ failed to properly analyze the medical evidence of record for all of the reasons discussed *supra*, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 29th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma